**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

| | | |
|---|---|---|
| **SHARON COBB,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **Vs.** | ) | **Civil No. 1:04CV128** |
| | ) | |
| **JOHN E. POTTER, Postmaster General, United States Postal Service,** | ) ) ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |
| | ) | |
| **SHARON COBB,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **Vs.** | ) | **Civil No. 1:05CV300** |
| | ) | |
| **JOHN E. POTTER, Postmaster General, United States Postal Service,** | ) ) ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## <u>MEMORANDUM AND ORDER</u>

**THESE MATTERS** are before the Court on Defendant John E.

Potter's motion for summary judgment.

# I. FACTS[1]

## A. Facts Relevant to 2002 Removal

The Plaintiff began employment with the United States Postal Service (USPS) as a mail processing clerk at the Asheville Processing and Distribution Center ("P&DC") in August 1997.  **Deposition of Sharon Cobb, dated May 11, 2006, at 12.**  Plaintiff was elected as a union steward in 1999.  ***Id.*, at 15.**  In her two years as a union steward, Plaintiff occasionally represented other postal employees at Equal Employment Opportunity ("EEO") proceedings.  ***Id.*, at 18.**

On May 24, 2002, Plaintiff received a Notice of Removal informing her that she would "be removed from the Postal Service no sooner than thirty (30) calendar days from [her] receipt of this notice" (referred to herein as the "Removal" or "Plaintiff's Removal").  **Exhibit 2, Notice of Removal, *attached to* Defendant's Memorandum in Support of Motion for Summary Judgment ("Defendant's Memorandum"), filed May 25, 2006, at 1; Complaint, filed July 2, 2004, ¶ 6; Defendant's**

---

[1] The facts and the inferences drawn therefrom are taken in a light most favorable to Plaintiff as the non-moving party.  ***See, Howard v. Winter,* 446 F.3d 559, 562 n.2 (4th Cir. 2006).**

**Memorandum, at 4.**  According to the Notice, Plaintiff's Removal was

based upon her insubordination on May 7, 2002.  **Notice of Removal, at 1.**

On May 7, 2002, Plaintiff was asked and directed, possibly as many

as eight times, to attend a training session.  *See, id.*; **Cobb Deposition, at**

**47.**  While Plaintiff testified that she never "refused" to attend the training, it

is undisputed that she never complied with the direction.[2] **Cobb**

**Deposition, at 49.**  Plaintiff was asked multiple times if she was refusing to

follow a direct order given by a superior.  *Id.*, **at 47.**  At some point in the

exchange between Plaintiff and her superiors, she asked the Manager of

Distribution Operations ("MDO") Pat Cosca what would happen if she

refused to follow the order.[3] **Notice of Removal; Cobb Deposition, at 48.**

Plaintiff then asked if MDO Cosca was going to give her a letter of warning,

_____

[2] While Plaintiff now avers that she "asked to be excused, primarily due to her medical condition," it is uncontroverted that Plaintiff did not state this or any other reason for not attending the training session when being repeatedly directed to do so.  **Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), filed June 19, 2006, at 7; Cobb Deposition; Exhibit 3, Deposition of Pat Cosca, taken May 19, 2006, at 61,** *attached to* **Defendant's Reply to Response to Motion for Summary Judgment ("Defendant's Reply"), filed June 26, 2006.**

[3] In response to her question, the Plaintiff testified that she could "not recall" Cosca stating that a refusal to follow the direct order of a superior would be considered insubordination.  *See,* **Cobb Deposition, at 48.**

and stated that she would post any such letter on her locker.[4] **Cobb**

**Deposition, at 48.** Plaintiff further informed her superiors that she was

"not a lamb like all the others, . . . . And you are not my shepherd." *Id.*, **at**

**49.**

Plaintiff's Notice of Removal recounted the events of May 7, and

informed Plaintiff that her insubordination was in violation of specific

portions of the Employee and Labor Relations Manual requiring, *inter alia*,

that employees follow instructions of their supervisors. **Notice of**

**Removal, at 2;** *see also*, **Exhibit 3, Agreement Between United States**

**Postal Service and American Postal Workers Union, AFL-CIO ("Labor**

**Agreement"),** *attached to* **Defendant's Memorandum.** The Labor

Agreement also provides that insubordination is an offense for which

removal can be an appropriate punishment. *See*, **Labor Agreement.**

Plaintiff was subsequently removed from her position of employment in

accordance with the Notice of Removal.

---

[4] The Notice of Removal relates Plaintiff's full statement as being that she would post a letter of warning on her locker "like a badge." **Notice of Removal.** Plaintiff, however, testified that she "did not say like a badge of honor." **Cobb Deposition, at 48.** The Court credits Plaintiff's testimony on this point, as Plaintiff is the non-movant at summary judgment. *See, Jennings v. Univ. of North Carolina at Chapel Hill*, 444 F.3d 255, 266 (4th Cir. 2006).

**B. Facts Relevant to Pre-Arbitration Settlement Agreement**

Following her Removal, Plaintiff filed an EEO complaint asserting that the Removal was in retaliation for having assisted others with EEO matters in the past (*i.e.*, engaging in protected activity). Additionally, a grievance was filed by the union in regards to the Removal. ***See, e.g.*, Defendant's Memorandum; Plaintiff's Response.** On or about January 9, 2003, Plaintiff, her regional union representative, and Defendant were involved in a pre-arbitration process. ***See*, Cobb Deposition; Exhibit 4, Pre-Arbitration Settlement Agreement, *attached to* Defendant's Memorandum.** The result of this process was a Pre-Arbitration Settlement Agreement ("Settlement Agreement") terminating the dispute.

Under the terms of the Settlement Agreement, Plaintiff's removal was reduced to a time-served suspension without pay, she received "all step increases and COLA she would otherwise have earned[,]" and she was returned to the position held before the Removal. ***See*, Pre-Arbitration Settlement Agreement.** In exchange, Plaintiff admitted that she "under[stood] that her conduct was improper and insubordinate" and agreed "to withdraw any and all other appeals, and/or complaints,

including, but not limited to EEO complaint No.1C-281-0082-02." *Id.* The specified EEO complaint was Plaintiff's complaint relating to the Removal.

Plaintiff admits that she signed the Agreement, and admits that she knew withdrawing her EEO complaint was a part of the Agreement. **Cobb Deposition, at 29, 35; Pre-Arbitration Settlement Agreement.** However, Plaintiff avers that she only signed the Agreement because she was under duress. **Cobb Deposition, at 29, 34-35.** Plaintiff asserts that her duress originated from two sources, (1) financial difficulties and (2) her union representative stating, *inter alia*, that she would likely lose her union grievance due to procedural errors occurring during earlier stages in the grievance process. *Id.*, **at 34-36.**

Q:  So how did this meeting – it was Rick Parrish, who is the union representative, who persuaded you to do this, to sign this settlement agreement?

A:  He said that, going back to the procedural error, that was huge. My financial condition, all of that was huge. He said that I did not have a chance to win the next day because of the procedural error because of my file not containing everything[.]

*Id.*, **at 76.** According to Plaintiff's testimony, her perceived inability to prevail at the arbitration proceeding was the biggest factor in her deciding to sign the Settlement Agreement. *See, e.g., id.*, **at 36 ("That was probably the most – thing that decided it for me[.]"), and 87 (Q: But**

**you had an option, you could just then not agree to it? . . . . A: But
then my fears of that procedural error and all those other things were
weighing on my mind too.").**

**C. Facts Relevant to Hostile Work Environment Claim**

Pursuant to the Pre-Arbitration Settlement Agreement, Plaintiff
returned to work in January 2003. **Cobb Deposition, at 90; Pre-
Arbitration Settlement Agreement.** Plaintiff testified that upon returning
to work she questioned Joanne Guess ("Guess") – a co-worker and the
"union steward who handled [Plaintiff's] Step One grievance" – about the
handling of her grievance claim. **Cobb Deposition, at 93.** Plaintiff
described the questions as "just regular questions about my case[.]" ***Id.*, at
93.**

According to Plaintiff, Guess began harassing her soon after her
return to work. ***Id.*, at 93-94.** Plaintiff avers that Guess engaged in the
following conduct: (1) "rolled a fully loaded piece of equipment into my
path, and I had to get out of the way to avoid being hit by it;" (2) Guess
would call her "bitch, snake, and those kind of things;" (3) "if we were going
to pass each other, she would walk toward me and I'd have to move to let

her pass," which on one occasion forced her to enter Debra Pearson's office; (4) on one occasion Guess walked into the bathroom behind Plaintiff, came to Plaintiff's stall, "looked in at me, and started shaking the door," but did not say anything as she did this;[5] (5) Guess told another employee that she would "'stomp [Plaintiff's] ass' if [Plaintiff] ever – if she ever saw [Plaintiff] away from work;" and (6) Guess used her union position to disadvantage Plaintiff, including requesting that Plaintiff be sent to less desirable jobs before others. *Id.*, **at 93-98, 100, 102.** Plaintiff does not know why Guess engaged in any of this conduct. *Id.*, **at 94-96.**

Plaintiff also asserts that MDO Debra Pearson engaged in harassing acts, and did so as retaliation for Plaintiff's prior protected activity. Specifically, Plaintiff's cites the following acts: (1) on various, unidentified occasions Pearson would change Plaintiff's work assignment to a less desirable machine; (2) Pearson imitated the conduct of Joanne Guess in

---

[5] Both Plaintiff and Defendant cite Plaintiff's deposition for the proposition that Guess was "calling out plaintiff's name" while shaking the bathroom stall door. **Defendant's Memorandum, at 8 (citing Cobb Deposition, at 96); Plaintiff's Response, at 19 (citing Cobb Deposition, at 96-97).** However, Plaintiff's testimony, found on the pages cited by the parties, is that Guess said *nothing* when she shook the door. **Cobb Deposition, at 97 ("Q: Was [Guess] saying anything as she was shaking the door? A: *No*. She just stood there looking in." (emphasis added)).**

shaking the bathroom stall door after a meeting at which Plaintiff had complained of such conduct by Guess; and (3) Plaintiff was directed to change her work schedule by reporting one hour later on a Saturday, which was a normal workday for Plaintiff, but was still required to work an eight-hour shift. *Id.*, **at 111, 114-15, 115-17, 126.**

Finally, from the time Plaintiff returned to work in late January 2003 until her retirement in December 2005, she had no suspensions, no letters of warning, and, in fact, no disciplinary proceedings at all taken against her. Furthermore, with the exception of one oral comment made by Pearson in relation to Plaintiff's production numbers, her performance was always rated as "good" by her superiors. *Id.*, **at 104-05.**

## D. Plaintiff's Lawsuits

This case involves two separate lawsuits filed by Plaintiff. The first case, Civil No. 1:04CV128, is based upon Plaintiff's removal in 2002 ("Claim 1"). The second case, Civil No. 1:05CV300, alleges a hostile work environment created after Plaintiff returned to work in January 2003 ("Claim 2"). According to Plaintiff, "[a]ll adverse actions by the USPS were

in retaliation for her prior involvement in E.E.O related matters[.]"[6]

**Plaintiff's Response, at 4.**

## II. STANDARD

Summary judgment is appropriate when "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law."

---

[6] At various times throughout her EEO filings, civil complaints, deposition, and response to Defendant's motion for summary judgment, Plaintiff has indicated that the actions complained of were based also upon her sex, sexual orientation, and union activity. Union activity, other than the "oppos[ing of] any practice made an unlawful employment practice by [42 U.S.C. § 2000e], or . . . charg[ing], testify[ing], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under [42 U.S.C. § 2000e,]" is not protected by Title VII. *See, e.g.*, **42 U.S.C. § 2000e-3(a);** *Lee v. United States Postal Service*, **882 F. Supp. 589, 596 (E.D. Tex. 1995) (Title VII does not protect union activities).** Similarly, sexual orientation is not a protected category under Title VII. *See, e.g.*, *Wrightson v. Pizza Hut of America*, **99 F.3d 138, 143 (4th Cir. 1996) ("Title VII does not afford a cause of action for discrimination based upon sexual orientation.").** Finally, given both Plaintiff's statement in her responsive memorandum that all actions were in retaliation for EEO activity, and Plaintiff's failure to produce any evidence indicating that any of the complained-of actions were based on her sex, the Court deems any claim of sex discrimination abandoned or, in the alternative, finds that summary judgment on such claim is certainly appropriate.

**Fed. R. Civ. P. 56(c).** "Summary judgment is proper 'unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" ***Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).** A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleading[s], but [must] . . ., by affidavits or as otherwise provided in [Rule 56], . . . set forth specific facts showing that there is a genuine issue for trial." **Fed. R. Civ. P. 56(e).**

## III. ANALYSIS

### A. Claim One - 2002 Removal

Plaintiff's first claim is that her Removal in May 2002 was in retaliation for her prior EEO work on behalf of other employees. ***See*, Complaint, filed July 2, 2004; Plaintiff's Response, at 4 ("All adverse actions by the USPS were in retaliation for her prior involvement in E.E.O. related matters[.]").** Defendant asserts entitlement to summary judgment on two bases. First, Defendant argues that Plaintiff knowingly

and voluntarily waived any claim based on the Removal when she signed the Pre-Arbitration Settlement Agreement in January 2003.  **See, Defendant's Memorandum, at 16-22.**  Second, Defendant asserts that even if Plaintiff did not waive her claim, summary judgment is nevertheless appropriate because Plaintiff cannot satisfy the *McDonnell Douglas* burden-shifting analysis.  **See, *id.*, at 22-27.**

### i. Waiver

An employee may waive a Title VII claim so long as the waiver is voluntary and knowing.  **See, e.g., Melanson v. Browning-Ferris Indus., Inc., 281 F.3d 272, 274 (1ˢᵗ Cir. 2002); Cassiday v. Greenhorne & O'Mara, Inc., 63 F. App'x 169 (4ᵗʰ Cir. 2003).**  An employer-defendant asserting that a Title VII claim has been waived bears the burden of establishing that the waiver was voluntary and knowing.  **Melanson, *supra.***  Whether a waiver was knowing and voluntary is determined by examining the totality of the circumstances.  **Id., at 276.**  Factors to consider in evaluating the totality of the circumstances include:

> [1] the waiving party's education and business experience, [2] the respective roles of the parties in determining the terms of the waiver, [3] the clarity of the agreement, [4] the amount of time the waiving party had to consider the waiver, [5] whether

the waiving party was represented by counsel, and [6] the consideration offered for the waiver[.]

***Medical Air. Tech. Corp. v. Marwan Inv., Inc.*, 303 F.3d 11, 19 n.4 (1st Cir. 2002) (citing *Melanson*, *supra*); *see also*, *Cassiday*, 63 F. App'x at 169-70 (affirming district court's finding that a voluntary and knowing waiver occurred, and citing *Melanson* with approval).** No single factor is determinative in the "totality of the circumstances" analysis, and the listed factors are non-exclusive. ***See*, *Melanson*, 281 F.3d at 276; *Cassiday v. Greenhorne & O'Mara, Inc.*, 220 F.Supp.2d 488, 493 (D. Md. 2002).**

While the parties dispute the second, third, fourth, and fifth "*Cassiday*" factors cited above, there is no dispute regarding the first or sixth factors. ***See*, Defendant's Memorandum, at 18-21; Plaintiff's Response, at 14.** The Court finds that Plaintiff's education and business experience are sufficient for her to have made a voluntary and knowing waiver of her Title VII claim,[7] and that Defendant provided ample

---

[7] Plaintiff has the benefit of approximately seven years of college education and extensive business experience, including that of an owner/operator and supervisor. ***See*, Cobb Deposition, at 9-12.**

consideration for the waiver.[8]  Therefore, the first and sixth *Cassiday*

factors weigh in favor of finding that Plaintiff knowingly and voluntarily

waived her Title VII claim.

The next consideration is the roles of Plaintiff and Defendant in

determining the terms of the waiver.  Although arguing that this factor

weighs in his favor, Defendant admits that Plaintiff had virtually no input in

regards to the terms of the waiver.[9]  ***See*, Defendant's Memorandum, at

19.**  This factor, therefore, weighs in favor of a finding that Plaintiff's waiver

was not voluntary and knowing.

Considering next the clarity of the agreement, this factor weighs in

favor of finding that Plaintiff executed a knowing and voluntary waiver of

her Title VII claim.  The Pre-Arbitration Settlement Agreement is a mere

two pages in length, consisting of twelve paragraphs none of which contain

_____

[8] Plaintiff was successful in negotiating her Removal to a time-served suspension without pay, received the return of her job, and was allowed to retain her seniority and "all step increases and COLA she would otherwise have earned."  **Pre-Arbitration Settlement Agreement.**

[9] Defendant argues that Plaintiff knew she was waiving her EEO claim and that Plaintiff was free not to sign and just "walk away."  **Defendant's Memorandum, at 19.**  The Court will consider these facts in judging the "totality of the circumstances," but does not consider them especially relevant to the instant determination, under the second *Cassiday* factor, of the role each party played in setting the terms and conditions of the waiver.

more than two sentences.[10]  *See*, **Pre-Arbitration Settlement Agreement.**
The Agreement uses very plain, simple language, and clearly sets out (1)
the understanding of the parties, (2) what things Plaintiff was agreeing to
do and what she was receiving in return, and (3) what things Defendant
was agreeing to do and was receiving in return.  *Id.*  The Pre-Arbitration
Settlement Agreement was "well within a lay person's comprehension."
*Melanson*, **281 F.3d at 277.**

The Court finds that the next factor, the time Plaintiff had to study the
agreement, weighs in favor of finding that Plaintiff's waiver was not
knowing and voluntary, as it is undisputed that Plaintiff had only a brief
amount of time to study the Settlement Agreement.  *See*, **Cobb
Deposition, at 33-34; Defendant's Memorandum, at 20.**

———————————

[10] Plaintiff's primary argument in regards to this factor is that the
agreement is unclear because it contains the phrase "this settlement is
non-precedent setting and may not be cited in any other forum."  **Pre-
Arbitration Settlement Agreement; Plaintiff's Response, at 14.**  The
Court does not find that this phrase muddies an otherwise completely clear
agreement.  Furthermore, although she asserts that "this provision would
lead a party to believe that the agreement could not be used to compel the
dismissal of the EEOC claim," at no time does Plaintiff assert that *she* was
actually confused by the statement.  **Plaintiff's Response, at 14; see
also, Cobb Deposition, at 35 (wherein Plaintiff testifies that she knew
she was signing away her EEO claim).**  In fact, to the contrary, Plaintiff's
testimony is clear that she knew she was agreeing to dismiss her claim.
**Cobb Deposition, at 35.**

Finally, as to the fifth *Cassiday* factor, Plaintiff did not have the benefit of counsel prior to signing the Settlement Agreement, nor was she encouraged to do so by the Defendant.  **See, Cobb Deposition; Defendant's Memorandum, at 20-21.**  Therefore, this factor weighs in favor of finding that Plaintiff did not knowingly and voluntarily waive her Title VII claim.

Having considered each of the six specific factors approved in *Cassiday*, three support Defendant's position while three support Plaintiff's position.  However, the question here is not one of simple mathematics, but rather of the actual facts and circumstances surrounding Plaintiff's execution of the waiver and whether, given the realties involved, Plaintiff's waiver was voluntary and knowing.  **See, e.g., Pierce v. Atchinson Topeka & Santa Fe Ry. Co., 110 F.3d 431, 442 (7th Cir. 1997) (describing the inquiry into the "voluntary and knowing" nature of a waiver of rights under the Age Discrimination in Employment Act as "an inquiry into the mental state of the party who is purported to have waived those rights").**  For example, while the fourth and fifth *Cassiday* factors – the time Plaintiff had to study the waiver and whether she had the benefit of counsel – weigh in Plaintiff's favor, their value is very small given

the particular circumstances of this case because at no time has Plaintiff even averred that if she had been afforded additional time to study the agreement or had been provided the advice of counsel she actually would have taken any different action. In other words, the Court cannot find that Plaintiff's waiver was ineffective as being not knowingly and voluntarily executed on the basis of a lack of time or counsel where the waiving party does not even argue that given the benefit of such items she would not have signed the waiver. In fact, it is clear from Plaintiff's Complaint and her deposition testimony that duress, and not any of the *Cassiday* factors, is the true basis for her desire to avoid the consequences of her waiver. **See, e.g., Complaint, filed July 2, 2004; Plaintiff's Response, at 10; Cobb Deposition, at 76, 87.**

Courts have recognized that, regardless of the outcome of the "totality of the circumstances" test, a waiver will not be given effect where the employee was under duress at the time of signing. **See, e.g., Melanson, 281 F.3d at 277.** Plaintiff contends that she was under duress and felt as if she had no choice but to sign the waiver (1) because she had financial difficulties owing to the loss of her job at the P&DC, and (2) because, due to purported procedural errors by her union representatives,

she did not believe she could win at her arbitration hearing. **See, Cobb Deposition, at 29, 34-36, 76, 87.** However, neither Plaintiff's difficult bargaining position as a result of possible procedural errors by her union representatives nor her difficult financial circumstances constitute duress sufficient to avoid the effect of her waiver. **See, e.g., Lannan v. Reno, 139 F.3d 901 (table), 1998 WL 90843, at \*\*1 (7th Cir. 1998) ("Duress 'is not shown by . . . a difficult bargaining position or the pressure of financial circumstances.'" (citation omitted)); Cassiday, 220 F.Supp.2d at 492 ("[B]oth law and policy suggest that one's personal economic burdens resulting from the loss of a job, should not constitute 'duress' for the purpose of invalidating a termination release." (citing Melanson)).**

Here, Plaintiff was free to not sign the Pre-Arbitration Settlement Agreement, take her chances with the arbitration, and thereby preserve her EEO complaint and any resulting Title VII claim based thereon. **Marshall v. Cooper, 182 F.3d 900 (table), 1999 WL 425851, at \*\*1 (2d Cir. 1999) ("[Plaintiff] was faced with the difficult choice of either agreeing to waive his claims or facing disciplinary proceedings, but . . . [plaintiff] was free to reject the terms of the agreement, which he did not.").**

Instead, Plaintiff chose to take the "sure thing" being offered in order to reclaim her job at the P&DC and avoid going to arbitration, a process her union representative informed her she was likely to lose. **Cobb Deposition, at 36.** Plaintiff "does not allege that [anyone] physically threatened her or otherwise misled or duped her into signing" the Pre-Arbitration Settlement Agreement. ***Cassiday*, 220 F.Supp.2d at 492.** Rather, Plaintiff now seeks to obtain what she apparently did not believe she could obtain then – a positive outcome for her union grievance (*i.e.*, the return of her job) *and* maintenance of her Title VII claim. Such is not a basis for setting aside an employee's waiver of a Title VII claim.

Having considered the totality of the circumstances surrounding Plaintiff's execution of the Pre-Arbitration Settlement Agreement, the Court finds Plaintiff's waiver of any claim based upon her Removal in 2002 was voluntary and knowing, and further finds a lack of any duress sufficient to avoid the effects of such waiver. Consequently, Plaintiff's waiver will be enforced and summary judgment on Plaintiff's first claim, asserting that her Removal in 2002 was in retaliation for having engaged in protected activity, is therefore appropriate. ***See, e.g.*, *Williams v. Professional Transp. Inc.*, 294 F.3d 607, 613 (4th Cir. 2002) ("A trial court possesses the**

**inherent authority to enforce a settlement agreement and to enter**

**judgment based on that agreement[.]").**

### ii. *McDonnell Douglas* Analysis

Alternatively, even if Plaintiff had not knowingly and voluntarily waived her Title VII claim based on the Removal, summary judgment would nevertheless be appropriate as a result of Plaintiff's inability to satisfy the *McDonnell Douglas* burden-shifting analysis.

Plaintiff asserts that her removal was in retaliation for having engaged in protected activity. **See, Plaintiff's Response, at 4.** Retaliation claims can be established, as Plaintiff attempts to do here, through the *McDonnell Douglas* burden-shifting analysis. **See, *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006).** Under the *McDonnell Douglas* analysis, Plaintiff has the initial burden of establishing a *prima facie* case of retaliation. ***Pascual v. Lowe's Home Centers, Inc.*, 2006 WL 2226571, at *3 (4th Cir. 2006).** A *prima facie* case of retaliation requires evidence that: (1) Plaintiff engaged in protected activity; (2) her employer took materially adverse action against her; and (3) a causal relationship existed between the protected activity and the adverse action. **See, *Baqir v. Principi*, 434**

**F.3d 733, 747 (4th Cir. 2006),** *petition for cert. filed***, 75 U.S.L.W. 3023**

**(U.S. June 15, 2006) (No. 05-1605);** *Burlington N. & Santa Fe Ry. Co. v.*

*White***, 126 S. Ct. 2405 (2006).**

If Plaintiff is successful in establishing a *prima facie* case, the burden

of production[11] shifts to Defendant to present a legitimate, non-retaliatory

reason for the challenged action. ***See, Laber, supra.*** Upon presentation

by the Defendant of a legitimate, non-retaliatory reason for the action, the

burden of production reverts back to Plaintiff to establish that the reason

proffered by Defendant is merely pretext for unlawful retaliation. ***See, id.***

For purposes of summary judgment only, Defendant concedes that

Plaintiff could establish a *prima facie* case of retaliation as it relates to her

Removal.[12] ***See, Defendant's Memorandum, at 23.*** With Plaintiff's *prima*

*facie* case established, the analysis turns to a consideration of whether

────────────────────

[11] The burden of persuasion remains always with Plaintiff. ***See, e.g.,*** *Diamond v. Colonial Life & Accident Ins. Co.***, 416 F.3d 310, 318-19 (4th Cir. 2005),** *cert. denied***, 126 S. Ct. 1033 (2006).**

[12] Defendant admits that Plaintiff engaged in protected activity, that Defendant was aware of such activity, and that Plaintiff's Removal constitutes adverse action. **Defendant's Memorandum, at 23.** Defendant "assume[s], *arguendo*, that plaintiff can establish" a causal relationship. ***Id.***

Defendant has presented a legitimate, non-retaliatory reason for Plaintiff's removal.  Defendant has presented such a reason.

As explained in the Notice of Removal issued to Plaintiff in May 2002, Defendant contends Plaintiff's Removal was a result of her conduct on May 7, 2002, which was, by her own admission, insubordinate.  ***See*, Notice of Removal; Pre-Arbitration Settlement Agreement.**  Although given multiple opportunities to do so, Plaintiff failed to follow the clear directives of her superiors.  Even though she was asked multiple times if she was refusing to follow a direct order, Plaintiff still failed to comply.  Then, having already engaged in insubordinate behavior, Plaintiff essentially mocked the punishment she apparently believed she would receive, telling her superiors that she would hang any letter of warning on her locker.  **Cobb Deposition, at 47-49; Notice of Removal.**  According to Glen Williams, a labor specialist for the USPS, Plaintiff's conduct was "a pretty blatant incident of insubordination."  **Exhibit 5, Deposition of Glen Williams, taken May 19, 2006, *attached to* Defendant's Reply, at 28.**

"[I]nsubordination is not an infraction that we see so clearly committed . . . management gave Ms. Cobb every opportunity to comply with the order, and she still steadfastly refused to do so.  We don't see such a clear case

of insubordination routinely." ***Id.*, at 66.** Under the terms of the labor

agreement between the Postal Service and the union, removal for such

conduct is allowed. ***See,* Labor Agreement.** Defendant has met his

burden of producing "'admissible evidence which would allow the trier of

fact rationally to conclude that the employment decision had not been

motivated by [retaliatory] animus.'" ***Thomas v. Sumter County***

***Correctional Ctr.*, 230 F.3d 1354 (table), 2000 WL 1294257, at \*\*1 (4th**

**Cir. 2000) (*quoting Texas Dep't of Community Affairs v. Burdine*, 450**

**U.S. 248, 257 (1981)).**

The burden now shifts back to Plaintiff to establish that Defendant's

proffered reason for the Removal is merely pretext for unlawful retaliation.

A plaintiff may, as Plaintiff does here, attempt to satisfy her burden by

presentation of comparative evidence. ***See,* Plaintiff's Response, at 16-**

**18.** That is, pretext can be shown by evidence establishing that other

employees engaged in conduct of comparable severity but received less

severe punishment. ***See, Cox v. Rumsfeld*, 2006 WL 2044844, at \*3 (4th**

**Cir. 2006) (noting plaintiff's presentation of comparative evidence in**

**attempting to establish pretext); *Embry v. Callahan Eye Found. Hosp.*,**

**147 F. App'x 819, 832 (11th Cir. 2005) ("[A] plaintiff may demonstrate**

**pretext through comparative evidence.");** *King v. Rumsfeld*, **328 F.3d 145, 151-52 (4th Cir. 2003) (discussing plaintiff's proffered evidence of disparate treatment as it pertained to plaintiff's attempt to show pretext for unlawful retaliation);** *Brown v. Duke Energy Corp.*, **2000 U.S. Dist. LEXIS 3299 (W.D.N.C. 2000)***; Vigil v. Colorado Dep't of Higher Educ.*, **1999 WL 407479, at \*4-6 (10th Cir. 1999) (disparate treatment as evidence of pretext).**

Plaintiff's proffered evidence of disparate treatment fails to establish that Defendant's legitimate, non-retaliatory reason for her Removal was merely pretext for unlawful retaliation.[13]  To establish pretext by comparing employees and their discipline, Plaintiff must establish that these other employees are similarly situated in all material respects.  ***See, e.g.,***

---

[13] Although averring that her claim is one for retaliation, Plaintiff also defines her claim as one for disparate discipline.  ***See*, Plaintiff's Response, at 4, 16-18.**  The elements necessary to establish a *prima facie* case of retaliation differ from those necessary to establish a disparate discipline case, and no where in her response does Plaintiff actually set forth the elements of the claim she purports to have sufficiently established.  ***See, id.***  However, because any claim for disparate treatment in discipline would require the same comparative evidence that Plaintiff tries unsuccessfully to utilize in order to show pretext, a claim for disparate discipline would also fail.  ***See, Shields v. Fed. Express Corp.*, 120 F. App'x 956, 964 (4th Cir. 2005) (setting forth the elements of a disparate discipline claim).**

*Heyward v. Monroe*, 166 F.3d 332 (table), 1998 WL 841494, at **2 (4th
Cir. 1998) ("[Plaintiff] must show that they are similar in all relevant
respects. There is no evidence that the employees 'dealt with the
same supervisor, [were] subject to the same standards and . . .
engaged in the same conduct without such mitigating circumstances
that would distinguish their conduct or the employer's treatment of
them for it.'" (citations omitted)); *Ellerby v. Branch Banking & Trust
Co.*, 2005 WL 2921635, at *3-4 (W.D.N.C. 2005). To be similarly situated,
the conduct engaged in by these other employees must, first and foremost,
have been as serious as the conduct engaged in by Plaintiff. *See, e.g.*,
*Ray v. CSX Transp., Inc.*, 2006 WL 1443501, at *4 (4th Cir. 2006);
*Heyward*, *supra*.

Here, Plaintiff has offered the affidavits of various employees
asserting that they, too, engaged in insubordination, but were not fired for
such conduct. *See*, Exhibit 2, Affidavit of Richard Burnette, *attached to*
Plaintiff's Response, ¶ 3; Exhibit 6, Affidavit of Darlene Miller,
*attached to* Plaintiff's Response; Exhibit 8, Affidavit of Chris Ownbey,
*attached to* Plaintiff's Response, ¶ 3. However, what must be compared
are the facts and circumstances of the offending conduct, not the title of

the offenses.  Each of these individuals relates a situation in which a directive from a superior was not heeded.  *See*, **Affidavits,** *supra.*  While such conduct may have been insubordinate, thereby matching the title of Plaintiff's conduct, none of these individuals presents a situation with facts and circumstances of comparable severity – that is, a situation in which an employee failed to heed the directive of a superior, such directive having been given multiple times on multiple occasions, and then, upon being asked multiple times if they were refusing to follow a direct order, essentially mocked the perceived disciplinary response.  *See*, **Notice of Removal; Cobb Deposition, at 47-49.**  Plaintiff's conduct on May 7 was much more than a mere failure to follow the directive of a superior, and her additional words and conduct set her situation apart from those presented by affidavit.[14]  While the title of "insubordination" may have been placed

---

[14] Plaintiff has also presented the conclusions of fellow employees as to their experiences with the various steps in the hierarchy of punishment imposed at the P&DC.  *See*, **Affidavits,** *supra.*  However, while it may be true that the first stage of punishment is generally a letter of warning, in this case the failure of such punishment to have any corrective effect on Plaintiff was a foregone conclusion.  As Plaintiff made clear, if she was given a letter of warning she would post it on her locker – in her words, she was not a "lamb" like the others.  *See*, **Notice of Removal; Cobb Deposition, 47-49.**  Courts do not sit as a "super-personnel department" in Title VII cases, requiring employers faced with unique employment circumstances to perform exercises in futility to avoid Title VII liability.

upon the conduct of these other employees, their conduct was clearly not of comparable seriousness.  Plaintiff cannot, under the guise of showing disparity in treatment, proffer evidence of less serious conduct bearing the same name and then point to a difference in the punishment received therefor as evidence of retaliation.  ***See, e.g., Cox, supra; Heyward, supra.***

Title VII does not prohibit an employer from disciplining an employee for unacceptable conduct simply because the employee has, at some previous time, engaged in conduct protected by Title VII.  ***See, e.g., Lyle v. County of Fairfax Virginia***, 2006 U.S. App. LEXIS 6025, at *14 (4th Cir. 2005).  While "statutes such as [Title VII] bar retaliation for exercising rights guaranteed by law, they do 'not clothe the complainant with immunity for . . . uncivil conduct in dealing with'" her superiors or co-workers.

---

***Anderson v. Westinghouse Savannah River Co.,*** 406 F.3d 248, 272 (4th Cir. 2005); ***Combs-Burge v. Rumsfeld***, 170 F. App'x 856, 862 (4th Cir. 2006), ***petition for cert. filed,*** 74 U.S.L.W. 3723 (U.S. June 19, 2006) (No. 05-1613); Williams Deposition, at 28, 45, 66 (describing the unique circumstance presented by Plaintiff's behavior and the reason for choosing specific discipline); Exhibit 6, Deposition of Brenda Kelley, taken May 19, 2006, ***attached to*** Defendant's Reply, at 54-55; ***Tinsley v. First Union Nat'l Bank***, 155 F.3d 435, 444 (4th Cir. 1998) ("It is the perception of the decision maker which is relevant to the question of retaliation, not the opinions of [Plaintiff's] co-workers or other third parties.").

***Mesnick v. General Elec. Co.*, 950 F.2d 816, 828-829 (1st Cir. 1991)**

**(*quoting Jackson v. St. Joseph State Hosp.*, 840 F.2d 1387, 1391 (8th**

**Cir. 1988)).** Assuming *arguendo* that Plaintiff has satisfied her burden of

presenting a *prima facie* case of retaliation, Defendant has proffered a

legitimate, non-retaliatory reason for Plaintiff's Removal and Plaintiff has

failed to establish that such reason is merely pretext for unlawful

retaliation. Summary judgment in favor of Defendant is, therefore,

appropriate.


## B. Claim 2 - Retaliatory Harassment

Plaintiff's second claim is that she was subjected to a hostile work

environment in retaliation for her prior protected activity. ***See*, Complaint,**

**filed September 12, 2005; Plaintiff's Response.** To establish a *prima*

*facie* case of retaliatory harassment, Plaintiff must show (1) that she

engaged in protected activity of which Defendant was aware,[15] (2) that she

was subjected to harassment "so severe or pervasive so as to alter the

---

[15] There is no dispute in this case that Plaintiff engaged in protected
activity, of which Defendant was aware. ***See*, Defendant's Reply, at 2
(acknowledging that Plaintiff's EEO activity was "protected activity"
under Title VII).**

conditions of her employment and create an abusive working environment," and (3) that a causal connection existed between her protected activity and the harassment.  *See, Von Gunten v. Maryland*, 243 F.3d 858, 863, 865-66 (4th Cir. 2001); *Harris v. General Motors Powertrain*, 166 F.3d 1209 (table), 1999 WL 7865, at *4 (4th Cir. 1999).

In determining whether the purported harassment was sufficiently severe or pervasive to create a hostile work environment, "a court must look at all of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Jennings v. Univ. of North Carolina, at Chapel Hill*, 444 F.3d 255, 269 (4th Cir. 2006) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1983).  The hostile work environment inquiry is both subjective and objective, as the conduct complained of must be "'severe or pervasive enough' to create 'an environment that a *reasonable person* would find hostile or abusive[.]'" *Von Gunten*, 243 F.3d at 870 (quoting *Harris v. Forklift Sys.*, *supra*) (emphasis added).

If Plaintiff succeeds in establishing a *prima facie* case, the burden shifts to Plaintiff to proffer a legitimate, non-retaliatory reason for the actions. **See, *Baqir*, 434 F.3d at 747.** Finally, if Defendant carries his burden of production, the burden reverts to Plaintiff to establish that Defendant's proffered reason is merely pretext for unlawful retaliation. **See, *id*.**

Plaintiff asserts that the following conduct by co-worker Joanne Guess created a hostile work environment:

(1) Guess rolling a piece of equipment towards Plaintiff, and Plaintiff having to move out of the way to avoid being struck;

(2) Guess stating to another employee that she would "stomp" Plaintiff's "ass" if she saw Plaintiff away from work;

(3) Guess calling Plaintiff "bitch" and "snake" and "those kinds of things;"

(4) Guess walking towards Plaintiff, "forcing [Plaintiff] to step out of the way;"

(5) Guess shaking the door of the bathroom stall that Plaintiff was attempting to use;

(6) Guess, as a union steward, making a copy of Plaintiff's job bid, sending it to management, and having Plaintiff assigned to work a more arduous piece of machinery before other employees;

**See, Cobb Deposition, at 93-98, 100, 102-107, 111-115; Plaintiff's Response, at 11-12; 2005 First Amended Complaint; Defendant's**

**Memorandum, at 7-8.** However, none of these acts can be considered in

determining whether the harassment asserted by Plaintiff was severe or

pervasive. Plaintiff has presented *no* evidence that Joanne Guess

committed any of the complained-of acts *because of* Plaintiff's prior

protected activity. The only inference to be drawn from the evidence

presented is that the problems between Plaintiff and Joanne Guess, which

problems flowed in both directions, were the result of a personal dispute

stemming from the handling of Plaintiff's union grievance relating to her

Removal.[16] In fact, no where does *Plaintiff* even argue that she can

_____

[16] Joanne Guess was the union steward who handled Plaintiff's grievance regarding her Removal at Step One. **See, Cobb Deposition, at 93.** Prior to signing the Pre-Arbitration Settlement Agreement, Plaintiff was informed that she would likely not prevail in her arbitration due, at least in part, to a procedural error committed at Step One. **Id., at 36.** According to Plaintiff, it was largely this procedural error and its effect on her arbitration that drove her to sign the Settlement Agreement, which Agreement she has sought to disavow. **Id., at 34-36, 76, 87; Complaint, filed July 2, 2004.** Plaintiff questioned Guess about the handling of the grievance upon her return to work, and the problems between the two began shortly thereafter with each complaining about the other and feeling harassed. **Cobb Deposition, at 93-94; Exhibit 12, Summary/Timeline Report: Claim of Hostile Work Environment ("Report"), *attached to* Plaintiff's Response, at 3, 4; Exhibit 10, Deposition of Debra Pearson, taken May 19, 2006, *attached to* Plaintiff's Response, at 58, 66.**

establish a causal connection between her protected activity and the

actions of Joanne Guess.[17]  *See*, **Plaintiff's Response, at 19-20.**

Title VII is not a general workplace civility code, nor does it create a

federal cause of action for every personal dispute between co-workers.

***See, e.g., Jennings, supra.***  Where a plaintiff has presented no evidence

of a causal relationship between the complained-of harassing act(s) and

her having engaged in prior protected activity, it is inappropriate to

consider the actions in determining the severity or pervasiveness of the

alleged harassment.  ***See, Morris v. Oldham County Fiscal Court*, 201**

**F.3d 784, 790-91 (6th Cir. 2000) ("Plaintiff argues that we should**

**include [her supervisor's] alleged 'retaliatory conduct' . . . into the**

---

[17] Whatever inference of causation might have otherwise been drawn from the temporal proximity of Plaintiff's return to work and Guess's conduct – which even Plaintiff does not argue should be drawn, and which would be extremely slight given the lengthy period of time between Plaintiff's last protected activity and the beginning of the conduct by Joanne Guess – is certainly rebutted by the overwhelming evidence that the problems between Plaintiff and Guess had nothing to do with retaliation for Plaintiff's protected activity and everything to do with a personal dislike for one another and their dispute relating to the handling of a union grievance that began when Plaintiff questioned Guess about the handling of her grievance.  ***See, e.g., Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005) (noting both the weakening of a causal inference as time lapses, and the rebuttal of any inference by other evidence and intervening acts).**

hostile working environment equation.  To do so would be a mistake .
. . .  There is no evidence in the record to suggest that any of [the
supervisor's] alleged offensive post-transfer conduct was committed
'because of sex.'"); *see also, Mason v. Wyeth, Inc.*, 2006 WL 1526601,
at *7 (4th Cir. 2006) ("[Plaintiff] was required to present evidence upon
which a jury could rest a determination that [his superior]
*discriminated* against [him] *because of* his hearing disability.  That is
what the ADA and other such anti-discrimination laws are intended to
prevent – discrimination against an employee because of the
protected trait at issue." (emphasis in original)); *Bhella v. England*, 91
Fed.Appx. 835, 845-46 (4th Cir. 2004) ("[W]hile it is clear from
[plaintiff's] evidence that many people at the Brig were intent on
making her life there very difficult, the critical question in this case is
*why* Brig officials were intent on making Bhella's life difficult."
(emphasis in original)).

The remaining conduct complained of by Plaintiff is attributable to management personnel,[18] specifically to MDO Debra Pearson.  Plaintiff cites the following acts by MDO Pearson:

(1) Debra Pearson changing Plaintiff's work assignment to a machine that Plaintiff considered "undesirable" on various, unidentified occasions;

(2) Debra Pearson imitating the conduct of Joanne Guess by shaking a bathroom stall door while Plaintiff was in the stall;

(3) Plaintiff being required to change her work schedule by one hour on a Saturday, her normal workday, but still working only an eight-hour shift.

*See*, **Cobb Deposition, at 93-98, 100, 102-107, 111-115; Plaintiff's Response, at 11-12, 20-21; Complaint, filed September 12, 2005;**

───────────────────

[18] Plaintiff also avers that she was harassed by management's "refusing to take any action to correct or prevent the harassment of plaintiff[.]"  **Plaintiff's Response, at 21.**  However, the record is clear that Plaintiff's complaints *were* investigated – on multiple occasions by multiple persons – and that even though the investigation revealed Plaintiff's situation with Joanne Guess to be a dispute flowing in both directions, management *did* take action: "management has made every effort to avoid placing the two of you on the same piece of equipment or in any work environment where you would work together.  This effort has been made to the detriment of operations at times in order to accommodate you."  **Exhibit 11, Memorandum for Sharon Cobb, dated October 6, 2004, *attached to* Plaintiff's Response; Pearson Deposition, at 38, 66; *see also*, Report.**  It appears from the record that Plaintiff's real complaint is that she wanted more severe action taken against co-worker Guess.  However, Plaintiff's having engaged in prior protected activity does not endow her with the right or authority to dictate employment policies for Defendant.

**Defendant's Memorandum, at 7-8.**  Even assuming *arguendo* that
Plaintiff could establish a causal connection between each of these
complaints and her having engaged in prior protected activity, the conduct
complained of does not amount to a work environment "'permeated with
discriminatory intimidation, ridicule, and insult that is sufficiently severe or
pervasive to alter the conditions'" of Plaintiff's employment and create an
abusive working environment.  ***Jordan v. Alternative Resources Corp.,***
**__ F.3d __, __, 2006 WL 2337333, at \*4 (4th Cir. 2006) (quoting *Harris v.**
**Forklift Sys., supra*).**

In making this determination, the Court has considered "'the
frequency of the discriminatory conduct; its severity; whether it is physically
threatening or humiliating, or a mere offensive utterance; and whether it
unreasonably interfer[ed] with [Plaintiff's] work performance.'"  ***Jennings,***
**444 F.3d at 269 (citation omitted).**  As to the frequency of the conduct,
Plaintiff's complaints consist of (1) two isolated incidents, Pearson's
imitating Joanne Guess in July 2004, and the schedule change of one hour
on one day in June 2004, and (2) the changing of Plaintiff's work
assignment on unidentified occasions.  ***See*, Cobb Deposition, at 112,**

**116, 106-07.** Considered over a three-year period,[19] this conduct is infrequent in nature.[20]

In addition to the infrequent nature of the complained-of conduct, such conduct lacks the severity necessary to create an objectively hostile work environment. While Pearson's imitation of Joanne Guess was, as admitted by Pearson, inappropriate, there is no evidence to contradict her sworn testimony that it was simply a poor attempt to inject humor into a tense employment situation, and further was an inappropriate act for which she apologized to Plaintiff. **Pearson Deposition, at 6-8.** Title VII does not immunize employees from an occasional teasing or joking act, even if such act is ill-conceived. **_Jennings_, 444 F.3d at 269-70.** Nor does Title VII immunize an employee from being made on occasion to work a less

---

[19] Plaintiff returned to work in January 2003 and retired in December 2005. **_See_, Cobb Deposition, at 90, 105.**

[20] Plaintiff can point to only two specific actions over a three-year period, with her remaining complaint a general allegation of changes in work assignments on some unidentified occasions. "[G]eneral allegations do not suffice to establish an actionable claim of harassment." **_Carter v. Ball_, 33 F.3d 450, 461-62 (4th Cir. 1994) (citing _Lenoir v. Roll Coater, Inc._, 841 F. Supp. 1457, 1462 (N.D. Ind. 1992), _aff'd_, 13 F.3d 1130 (7th Cir. 1994), for the proposition that "vague allegations . . . without reference to exact dates . . . [are] insufficient to support a harassment claim").**

desirable assignment.  ***See, Combs-Burge v. Rumsfeld*, 170 F. App'x**

**856, 862 (4th Cir. 2006) ("[A]ssigning individuals remedial tasks . . .**

**and assigning individuals to difficult jobs are not objectively abusive**

**actions[.]").**  Finally, while Plaintiff was "devastated" by being directed to

change her schedule on one day by one hour as a result of a special

holiday, no reasonable employee would have had such a severe reaction.

***See*, Plaintiff's Response, at 22; Report, at 1 (noting that Plaintiff left**

**work on June 9, the day she was directed to change her schedule by**

**one hour on one day, and did not return to work until July 12); Cobb**

**Deposition, at 126; Pearson deposition, at 14-25.**  From the perspective

of a reasonable employee, the conduct here is simply insufficiently severe

to create an employment environment seething with intimidation, insult,

and ridicule.[21]

---

[21] In a Memorandum of Additional Authorities, filed July 18, 2006, Plaintiff analogized her case to that of a plaintiff-employee referenced in the Supreme Court's opinion in *Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405 (2006).  The Court in *Burlington Northern* referred to the case presented in *Washington v. Illinois Dep't of Revenue*, 420 F.3d 658 (7th Cir. 2005), wherein an employer permanently changed the plaintiff-employee's work schedule after she filed a discrimination complaint.  The plaintiff-employee was a working mother who had depended upon the ability to work a flex-schedule due to her having small children.  The Supreme Court, in referencing such circumstance, stated that "[a] schedule change in an employee's work schedule may make little difference to many

Third, the infrequent, non-severe conduct of which Plaintiff complains was neither physically threatening nor humiliating.[22]  Finally, the complained-of acts did not unreasonably interfere with Plaintiff's work performance.  She performed well at her job, received good evaluations, and had no disciplinary actions taken against her between her return to work in January 2003 and her retirement in December 2005.  **See, Cobb Deposition, at 105;** *see also*, *Elkins v. Pharmacy Corp. of America*, **217 F.3d 838 (table), 2000 WL 962669 (4th Cir. 2000).**

Plaintiff has the burden of establishing a working environment that is not merely subjectively hostile, but that is also *objectively* hostile.  Certainly the complained-of actions did not allow for a perfect working environment.  Such is not guaranteed by Title VII; Title VII only guarantees that Plaintiff

―――――――――――

workers, but may matter enormously to a young mother with school age children."  ***Burlington Northern*, 126 S. Ct. at 2415 (citing *Washington*).**  This Court does not find Plaintiff's being requested (and then, upon refusal, directed) to change her schedule by one hour on one day due to the special circumstances presented by a special holiday equivalent to the situation, presented in *Washington* and referenced in *Burlington Northern*, of a working mother dependent upon a flexible schedule having her work schedule permanently changed.

[22] In fact, aside from Pearson's shaking the bathroom stall door, the other two actions complained of were managerial work decisions that were within Pearson's authority to make.  **See, Cobb Deposition, at 111.**

will not be subjected to an environment of intimidation, ridicule, and insult "so severe or pervasive so as to 'alter the conditions of her employment and create an abusive working environment.'" ***Harris v. General Motors Powertrain, supra* (citation omitted).** The conduct here falls short of such threshold.

Assuming *arguendo* that Plaintiff could establish a causal connection between the acts of Debra Pearson and Plaintiff's protected activity, such acts do not amount to harassment that is so severe or pervasive so as to alter the conditions of Plaintiff's employment. Plaintiff has failed to establish a *prima facie* case of retaliatory harassment and summary judgment for Defendant is, therefore, appropriate.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment is hereby **GRANTED**. A Judgment is filed herewith.

Signed: August 22, 2006

Lacy H. Thornburg
United States District Judge